31 C.C.P.A. (Patents)

## In re KINGSTON.

## Patent Appeal No. 4883.

Court of Customs and Patent Appeals.
April 4, 1944.

Rehearing Denied April 27, 1944.

John J. Rogan, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 10, 13, and 14 of appellant's application for a patent. Claim 15 was also rejected by the examiner and such rejection was originally affirmed by the board, but

upon a petition for reconsideration of the rejection of said claim the board reversed the action of the examiner and held that claim 15 should be allowed.

Claim 10 is illustrative of the subject matter of all the claims and reads as follows:

"10. A fused joint or vacuum-tight seal between a soft glass having a curved temperature-elongation characteristic varying from zero to approximately 0.005 cm. per cm. over a temperature range of from approximately 25° C. to 500° C. and an alloy having a matched curved characteristic, said alloy being composed of from 38 to 45 percent nickel and substantially entirely free from cobalt; 3 to 15 percent chromium and the balance substantially entirely iron."

Claim 13 differs from claim 10 only in that it recites the strength of the alloy as being from 125,000 to 150,000 pounds per square inch.

Claim 14 differs from claim 10 only in that it recites the element "not over 0.4 percent manganese."

Allowed claim 15 reads as follows:

"15. A fused joint or vacuum-tight seal between a soft glass having a curved temperature-elongation characteristic varying from zero to approximately 0.005 cm. per cm. over a temperature range of from approximately 25° C. to 500° C. and an alloy consisting of approximately 42 percent nickel; 4 to 8 percent chromium, and the balance not less than 50 per cent iron substantially entirely free from cobalt."

The alleged invention relates to an article such as a vacuum tube having metal leads bonded to the glass. The tube is made of soft glass, and the alloy used consists principally of nickel, chromium, and iron, having a specified composition which, it is stated, has an expansivity substantially equivalent to that of the glass tube, thus maintaining the vacuum-tight character of the tube over a wide range of temperature variations.

The reference cited is: Scott, 2,065,404, December 22, 1936.

The patent to Scott discloses the same objective as that of appellant, viz, to provide a vacuum-tight joint between a soft glass tube and a metal conductor.

The patent states:

"One object of my invention, therefore, is to provide satisfactory seals between soft glasses and ferrous base alloys which

have expansivity characteristics corresponding to those of the glass and inflection temperatures in excess of the strain point of the glass."

Scott accomplishes his object in substantially the same way as does appellant, except in certain respects relating to the proportions of nickel and iron employed. He states that the use of cobalt in the alloy composition is preferred, but he clearly discloses an alloy which contains no cobalt. In his patent he gives a table of alloy compositions having the same expansivity as that possessed by soft glass. Twelve alloy compositions are stated, three of which contain no cobalt. The fifth alloy so set out is as follows:

tity, usually less than 1%, incorporated in commercial alloys to enhance forgeability) has the effect of raising the expansivity and lowering the inflection temperature. An addition of chromium has a similar effect."

Thus it will be seen that Scott teaches that if the nickel content is lowered the expansivity of the alloy is lowered, but that the addition of manganese or *chromium* has the effect of raising the expansivity of the alloy.

Claim 6 of the Scott patent reads as follows:

"6. A fused joint or seal between a soft glass having an expansivity of from 7 to

| Percentage content of— | | | | | |
|---|---|---|---|---|---|
| Alloy mixture | Iron* | Nickel | Cobalt | Manganese | Chromium |
| e | 49.8 | 46.5 | 0.0 | 0.7 | 3.0 |

* Stated values also include nominal contents of deoxidizing and desulphurizing elements and impurities.

With respect to this table the patent states:

"It is desired to emphasize that the presented table of alloy compositions is illustrative rather than limiting, it being restricted to additions of the readily oxidized elements chromium and manganese only. Other elements such as aluminum, silicon and boron may be substituted for those elements and may be used in various combinations rather than singly."

The Scott composition above set out is within the range of the percentage of chromium recited in the claims and with respect to nickel it is somewhat higher than the upper range of nickel set forth in the claims, the percentage of nickel set out in said quotation from the table being 46.5 per cent while the upper range of nickel set forth in the claims is 45 per cent.

The percentage of manganese set out in the Scott table is 0.7 per cent while the percentage set out in appellant's claim 14 is 0.4 per cent.

With respect to lowering the percentage of nickel in his composition, Scott states:

"For example, as the nickel content of the subject alloys is lowered, both the expansivity and the inflection temperatures are also lowered, and vice versa. An addition of manganese (above the small quan-

$12 \times 10^{-6}$ per° C. and a strain point of about 350° C. and an iron-nickel alloy having an expansivity substantially equivalent to that of the glass and an inflection temperature in excess of 350° C., said alloy being made up substantially 44 to 48% of nickel, a substantial quantity, in the aggregate between 1.0 and 7% of *one or more* of the elements manganese, *chromium*, silicon, aluminum and boron the presence of which enhances the formation of a surface oxide readily fusible by the glass, and the balance substantially of iron." (Italics ours.)

The Primary Examiner rejected the claims upon the ground that Scott shows the same matched characteristics of the glasses and alloys as does appellant; that he disclosed variation in the nickel content may be resorted to in order to change the expansivity characteristics of the alloy, and that any variations between the alloys claimed and those disclosed in Scott's table, hereinbefore referred to, are "variations in degree and not in kind, no new and unexpected result being obtained."

With respect to the tensile strength of the alloy recited in claim 13, the examiner held that element was inherent in the alloy, and that there "is no reason to believe that Scott's alloys do not have a strength

comparable to that of the applicant's alloys."

The Board of Appeals in its original decision affirmed the decision of the examiner with respect to all the claims, giving the same reasons for the rejection of the claims as were urged by the examiner.

In its petition for reconsideration of the decision of the board respecting claim 15, it was urged that the 42 per cent of nickel recited in said claim was critical, and in support of such contention an affidavit by appellant was filed.

In its decision upon reconsideration the board stated:

"When Scott omits cobalt (Table II Mixture f) the nickel content is too high to anticipate and the iron content is too low. Also Scott uses more manganese than is suggested by applicant. We believe Scott clearly indicates that the nickel content may be lowered or raised depending on the expansivity desired. If it were lowered to 42 in example f, there still remains the doubt as to whether Scott would increase the iron content or the chromium content or both and there is no indication from Scott's disclosure exactly what would be done as to the chromium and iron. On reconsideration, we cannot say that the alloy of claim 15 is obvious from the Scott disclosure."

With respect to the affidavit of appellant above mentioned, the board said:

"The affidavit filed with the petition has not been considered by the examiner and it is not the practice to remand the case to the examiner after the Board's decision for the purpose of considering an affidavit. For this reason we have not considered the affidavit in arriving at this decision."

Appellant urges that the reasoning of the board with respect to claim 15 also applies to the claims before us, and as claim 15 was allowed the claims before us should also be allowed.

■ It is well established that rejected claims may not be properly measured by allowed claims in order to determine patentability of the former. In re Eitzen, 86 F.2d 759, 24 C.C.P.A., Patents, 798; In re Borden, 68 F.2d 983, 21 C.C.P.A., Patents, 915.

Furthermore, it will be observed that the percentage of nickel recited in claim 15 is 42 per cent, while the percentage in the rejected claims ranges from 38 to 45 per cent.

■ The affidavit filed with appellant's petition for reconsideration was refused consideration by the board, and properly so.

Appellant, in his reasons of appeal, makes no mention of this affidavit, but in his brief before us he referred to said affidavit as supporting his contention that the percentages of nickel and chromium named in the claims were critical. It is obvious that such reference to the affidavit by counsel for appellant was improper, and we will not consider it.

■ Coming now to the merits of the case we are clear that the decision of the board with respect to claims 10, 13, and 14 should be affirmed.

The Scott disclosure clearly embraces such soft glasses as are here involved.

Scott clearly teaches that the nickel content of the alloy may be lowered; that if it is lowered the expansivity of the alloy is also lowered, but if chromium be added it has the effect of raising the expansivity of the alloy. Appellant contends that Scott taught that the addition of manganese also had the effect of raising the expansivity of the alloy, and that such is not the case. It is immaterial here whether the addition of manganese raises the expansivity of the alloy or not. Scott may have been mistaken in this regard but he clearly taught that the addition of chromium had the effect of raising the expansivity of the alloy.

Claim 6 of the Scott patent, evidently overlooked by the Patent Office tribunals, corroborates the construction given by them of the Scott specification. While we are in accord with such tribunals in their holding that the percentages recited in the claims before us are not critical, it is clear that Scott taught that the percentage of nickel in the alloy might be as low as 44 per cent and the chromium percentage might vary from 1 to 7 per cent without cobalt being present in the alloy.

It will be observed that the claims before us require from 38 to 45 per cent of nickel and from 3 to 15 per cent of chromium.

It will thus be seen that the claims before us clearly overlap claim 6 of the Scott patent, the latter having a range of from 44 to 48 per cent of nickel and from 1 to 7 per cent of one or more of several substances, one of which is chromium.

With respect to claim 14 which recites the presence in the alloy of not over 0.4 per cent of manganese, the Scott patent recites that it is usual in commercial alloys to add less than one per cent of manganese to enhance forgeability. In the light of the foregoing, the addition to the alloy of manganese recited in claim 14 cannot aid patentability of the claim.

With respect to the limitations in claim 13 reciting the tensile strength of the alloy, we are in agreement with the view of the examiner (not referred to by the board), that there is no reason to believe that Scott's alloys do not have a strength comparable to that of appellant's alloys.

For the reasons stated, the decision of the board is affirmed.

Affirmed.

GARRETT, P. J., did not participate in the consideration or decision of this case.