52 C.C.P.A. (Patents)

## In re KINGSTON.

### Patent Appeals No. 4990.

Court of Customs and Patent Appeals.

April 9, 1945.

John J. Rogan, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This controversy is before us by appeal from the decision of the Board of Appeals of the United States Patent Office affirming the examiner's rejection of six claims (no claim being allowed) numbered 39 to 44, inclusive, of appellant's application for patent relating to a metal body adapted to be sealed to glass. Another claim, numbered 45, the status of which is hereinafter stated, is listed with the appealed claims.

Claims 39, 40, and 42 read as follows:

"39. A metal body for providing a vacuum-tight sealed-to-glass comprising a quaternary alloy of iron, nickel, chromium and a fourth metal, with a nickel content of between 38 and 45%, chromium between 3 and 15%, the fourth constituent consist-

ing of 0.1 to 2% of a metal such as aluminum, zirconium or calcium, the iron constituting the balance of the alloy, said body having a tightly adherent self-protecting oxide surface preformed thereon at high temperature prior to the sealing of the said body into the glass, said fourth metal having the property when incorporated in said proportions of facilitating the preformation of said oxide at said temperature.

"40. A metal body according to claim 39, in which said preformed oxide is a chromium oxide which acts as a self-protecting adherent layer to prevent the formation of iron oxide on the exterior of said body when said body is subsequently subjected to the heat of sealing-in to the glass.

"42. A metal body for making a vacuum-tight metal-to-glass seal consisting of quaternary alloy of iron, nickel, chromium and a small percentage of aluminum with a nickel content of between 38 and 45%, a chromium content of between 3 and 15% and aluminum content of between 0.1 and 2.0% which enhances the formation of a tightly adherent oxide coating when the body is heated to a temperature greatly in excess of the melting temperature of the glass body to which it is to be sealed; and the rest substantially iron."

Claim 41 recites that the tightly adherent oxide named in claim 39 is preformed at a temperature of the order of 1300° C. in an atmosphere of moist hydrogen. Claim 43 names zirconium as the fourth metal, instead of aluminum, and claim 44 names calcium.

Two patents are cited as references, viz.: Jonas, 1,627,780, May 10, 1927; Scott, 2,065,404, December 22, 1936.

A brief description of the subject matter is stated by the examiner as follows: "The alleged invention relates to an insert, or sealing-in wire, for a vacuum tube, such as a radio tube. The insert is formed of an alloy which has expansivity characteristics which result in securing a good bond between the glass and the metal insert. Prior to sealing the insert into the tube, the insert is given a pre-oxidizing treatment in moist $H_2$ to form an adherent oxide coating. This coating aids in securing the bond between the metal and the glass."

Claims 39, 40, 42, 43, and 44 stand rejected as presenting nothing patentable over the Scott disclosure. Claims 39 and 40 were also rejected as not being proper Markush claims, apparently the sole ground of rejection of claim 41 which is dependent on claim 39.

Claims 39, 40, and 41 are generic claims, while claims 42, 43, and 44 are species claims. Only in the event of the allowance of one of the generic claims could all three species be allowed. So, having rejected all the generic claims, claims 43 and 44 were rejected not only on the references but on the further ground that they are drawn to "non-elected species."

It will be observed that the four ingredients entering into the metal body as defined in claim 39 are (1) alloy of iron; (2) nickel; (3) chromium, and (4) "a metal such as aluminum, zirconium or calcium." The view of the examiner that claims 39 to 41 are not proper claims under the Markush rule is expressed in his statement following the appeal to the board as follows:

" * * * The Examiner's position is that it is not evident to one in the art which metals will function like the aluminum, calcium and zirconium to facilitate the preformation of the oxide. The mere fact that applicant has found that certain elements will produce a particular result does not entitle applicant to lay claim to any other element which may later be found to produce the same result. The only way of determining what other elements, if any, may be used, is by way of experiment and test. Applicant has not shown any recognized class of elements which would lead one to any other element. Applicant has attempted to show that one in the metallurgical art would know which elements are like calcium, aluminum and zirconium. It is, considered, however, that applicant has clearly failed to support his position. Applicant states that the three elements form an extremely stable oxide, but the mere fact that these three elements form a stable oxide does not teach one which elements are like th[r]em, for the purpose for which they are used by applicant, that is to form an adherent oxide. The claims are not dependent on the formation of a stable oxide. The characteristics of the oxide are defined otherwise. It may be admitted that beryllium and magnesium, which applicant suggests as obvious possible alternatives for the aluminum, calcium and zirconium, form stable oxides. This would not lead to the

conclusion that those metals when added to the iron-chromium-nickel alloy would aid in the formation, on oxidation, of a tightly adherent oxide film. There are many other metals, such as the chromium in the alloy, which form highly stable oxides. The stability of the oxides has not been disclosed as the test, and is not even now stated to be the test as to formation of the desired oxide coating. Applicant also refers to the fact that beryllium, magnesium and calcium are in group 2a of the periodic system, but applicant did not allege that the presence in the same group in the Periodic Table is the test, and he does not now so allege. It is to be noted that the three elements, calcium, aluminum and zirconium are each in different groups in the Period Table.

\* · \* \* \* \*

"The claims do not recite a group of substances in the Markush form. They are alternative with respect to the fourth element. Insofar as they are intended to form a group of the Markush type, they are improper because aluminum, zirconium and calcium would not be expected to be equivalents for the intended purpose, from a knowledge of the prior art. Admittedly these elements have properties in common, as do all substances to a certain extent. But applicant has not disclosed why one would expect these elements to facilitate the production of the desired oxide. The fact that they form stable oxides is believed to be an unsatisfactory reason for expecting these elements to be equivalent in view of remarks already made."

Following the decision of the board affirming that of the examiner, appellant filed a petition for reconsideration which was granted, and the board, in its second decision (in which it adhered to the conclusion reached in its first), restated its position somewhat more clearly in the following paragraphs:

"It is desired to point out first of all that petitioner has apparently misunderstood our holding with respect to the rejection under consideration. We held that the claims do not recite a group of substances in the Markush form, which was the basis of the Examiner's rejection, but are purely alternative. By this is meant that the use of the term "or" in the claim imparts an alternative meaning. What appellant may have intended and what the claims state is another matter. If drawn in proper form the claim would read: a fourth constituent consisting of 0.1 to 2% of a metal selected from the group consisting of aluminum, zirconium and calcium, and not as appellant has phrased the claim, 'such as' coupled with the alternative expression 'or'. The Markush form of claim has come into extensive use in chemical cases and the proper form for grouping elements in such a claim has become well recognized and should be followed when such claims are resorted to. This is the Examiner's objection to the claims as we understood it.

"Petitioner's statement that the claims could not have been objected to if no metals whatever had been listed is beside the point. If no metals had been listed, then the claims could not possibly have been even thought of as being in the Markush form, but would have been the usual type of broad generic claim."

It seems entirely clear to us that claim 39 is not in proper form to meet the Markush rule. Its fourth element is too broad involving, as it does, three distinct metals each of which may be in a different class, so that the claim may cover three classes while the Markush rule contemplates only one class. Claims 40 and 41 are made dependent upon claim 39, and, therefore, must fall with it.

Claim 42 stands rejected primarily on the patent to Scott, which constitutes also an additional ground for the rejection of claims 39 and 40. The patent to Scott discloses the use of aluminum (the fourth element designated eo nomine in claim 42, supra) for improving the adhesion of the oxide film. Scott does not disclose the exact percentage of aluminum suitable for such use, but there does not appear to be any definite showing that the percentages named by appellant are critical. As is pointed out in the brief of the Solicitor for the Patent Office, Scott lists aluminum as an equivalent of manganese, and in a table of alloy compositions shown in his specification there is one example showing 0.7% manganese used in combination with iron, nickel, and chromium. This is within the range of 0.1% to 2.0% of the aluminum as designated in appellant's claim 42. (It may be remarked that the patent to Jonas also teaches the use of aluminum for improving the bond between a metal alloy and glass, the percentage ranging from 0.5% to 5.0%. The Jonas patent standing alone,

however, would probably not be a complete reference.)

We think there was no error in rejecting claim 42 on Scott, nor in the rejection of the other claims on the grounds recited.

Our decision in the case of In re Kingston, 142 F.2d 249, 31 C.C.P.A., Patents, 1050, appears to be directly in point here. In that case the applicant (who is the applicant here) presented claims involving a combination of three metals, nickel, chromium, and iron, with percentages stated substantially similar to the percentages of the instant claims. The claims were rejected on the same Scott patent which is cited as a reference here. It is obvious from that decision that the claims here could be allowed only on the basis of the aluminum, or the feature of the oxide film, as recited in claim 41, and both of these are disclosed by the Scott patent. Since claim 41 is dependent upon claim 39, its patentability is not deemed to be enhanced by the degree of temperature ("of the order of 1300° C.") named therein for preforming the oxide film, although that degree is considerably in excess of the degree (950° C.) named by Scott, and were it not made dependent on claim 39, might not be met by Scott.

There is no contention that claims 43 and 44, rejected as drawn to "non-elected species," may be allowed in the absence of the allowance of at least one of the generic claims, and we need not further consider them.

As has been stated, a claim numbered 45 is listed with the claims on appeal, and the refusal of the board to allow it is included in one of appellant's broad reasons for appeal.

As a matter of fact the claim was never before the board. It was formulated after the board's second and final decision, and appellant petitioned the commissioner to restore jurisdiction in order that it might be considered, or at least that it might be entered for purposes of appeal. The petition was denied and so the claim never became a part of the case. Under such circumstances, this court is without jurisdiction to consider it.

The decision of the board is affirmed.

Affirmed.